The Honorable S. Kate Vaughan

\_\_\_\_\_ FILED   \_\_\_\_\_ ENTERED
\_\_\_\_\_ LODGED   \_\_\_\_\_ RECEIVED

SEP 10 2021

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                              DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>STEVEN CANAN AND JASON PATRICK,<br><br>　　　　　　　Defendants. | CASE NO. MJ21-506<br><br>COMPLAINT for VIOLATION |

BEFORE, The Honorable S. Kate Vaughan, United States Magistrate Judge, U.S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### (*Possession of Fentanyl with Intent to Distribute*)

On or about September 9, 2021, in King County, within the Western District of Washington, the defendant, STEVEN CANAN and JASON PATRICK, did knowingly and intentionally possess, and did aid and abet the possession of, with the intent to distribute Nphenyl-N-[1-(2 phenylethyl)-4-piperidinyl] propenamide, also known as fentanyl, a substance controlled under Title 21, United States Code, Section 812.

It is further alleged that the offense involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

The complainant states that this Complaint is based on the following information:

I, SCOTT FUSCO, a Special Agent (SA) with Homeland Security Investigations (HSI), Seattle, Washington, having been duly sworn on oath, depose and state as follows:

## I.  INTRODUCTION

1. I am a Special Agent with Homeland Security Investigations ("HSI") within the United States Department of Homeland Security (DHS). As a Special Agent, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801, et seq., and other violations of federal law. I have been a Special Agent with HSI since September 2019. I was trained to conduct investigations relating to violations of federal law including the manufacturing and trafficking of controlled substances and money laundering through the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to my employment with HSI, I worked as a US Customs and Border Protection Officer (CBPO) from 2011-2019. Working both domestically as well as internationally. Throughout my time as a CBPO, I have worked counterterrorism, a narcotics enforcement team, as well as a part of an admissibility enforcement unit.

2. As a federal law enforcement officer, I have received formal training, as well as extensive on-the-job training, in the investigation of narcotics trafficking. I have conducted and participated in investigations involving controlled substances, money laundering, and other criminal activity, including those leading to arrest and prosecution. As a result of these investigations, I have become familiar with methods and techniques used by narcotics manufacturers and distributors, persons in possession of narcotics for purposes of sales and transportation, and persons conspiring to transport and sell

narcotics. I am also familiar with the methods employed by narcotics traffickers to conceal their trafficking activity and the origin of proceeds generated by this activity. I am aware that traffickers use slang and coded words, multiple cell phones, concealed compartments, "stash" houses to conceal their activities, and launder or otherwise conceal cash proceeds by hiding and transporting bulk cash, sending funds through wire transfers or bank accounts in other persons' names, or investing in assets placed in other persons' names. I have also worked and consulted with numerous law enforcement officers experienced in narcotics and money laundering investigations. As a result, I am familiar with how money launderers and drug traffickers speak to each other and generally conduct business. For example, I am aware that money launderers and drug traffickers discussing criminal matters over the phone often speak in code or in vague terms. I am also aware that these subjects frequently (1) provide false subscriber information to the service providers, (2) use phones which are subscribed to under identities other than their own, and (3) change phones in order to avoid detection by law enforcement.

    3.    Because this complaint is submitted for the limited purpose of determining whether there is probable cause to support the charge contained herein, it does not set forth each and every fact that I or others have learned during the course of this investigation.

    4.    The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. The recitation of facts below does not include everything known to me about this investigation, this crime, or this Defendant. I have only included sufficient facts necessary to establish probable cause that these Defendants committed the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

crimes charged in this Complaint.  Significant additional details have been omitted for the sake of brevity.

5. Where I have included statements of others, they are set forth in substance and in part, and are not direct quotations.

## II. SUMMARY OF PROBABLE CAUSE

6. Since approximately April 2021, HSI, the Drug Enforcement Administration (DEA) and the United States Postal Inspection Service (USPIS) have been investigating a transnational narcotic smuggling and money laundering organization involved in the distribution of large amounts of narcotics and laundering of narcotics proceeds in the Western District of Washington. During the investigation, HSI Agents, acting in an undercover capacity (UC) were introduced via a third party to Steven CANAN who was subsequently identified as a member of the organization. During multiple telephonic and face to face meets with CANAN, HSI undercover special agents (UCAs), represented to CANAN that they would be interested in purchasing kilogram level quantities of narcotics from the organization.

7. On or about May 13, 2021, HSI UCAs met with Steven CANAN in the Western District of Washington. During that meeting, CANAN told the UCAs that his friend sells "fentanyl" pills at $5.00 a pill. CANAN further stated that his friend acquires the pills at $3.00 a pill. The UCAs told CANAN that they were also involved in narcotics smuggling. At the conclusion of the meet, CANAN provided the UCAs with his telephone number so that they could further negotiate a narcotics transaction.

8. On August 23, 2021, one of the UCAs, hereafter UCA1, sent a text message to Steven CANAN at the telephone number he provided UCAs on May 13, 2021, to inquire about the purchase of approximately 400 "M30" pills. CANAN responded to the text and agreed to sell the pills to UCA1. CANAN agreed to meet the UCAs at the Alderwood Mall in Lynnwood, Washington.

9. Based on my training and experience, I am aware that legitimately manufactured oxycodone pills are frequently light blue in color and contain an "M" stamped on one side, with the number "30" stamped on the other side. I am aware that counterfeit oxycodone containing fentanyl sold in the Western District of Washington is the same size and shape, and possesses the same markings as legitimate oxycodone, but varies in color and quality. Fentanyl is a synthetic opioid that is 50 times more toxic than heroin. In its purest form, fentanyl is a white powder, or it can resemble grains similar in size to table salt. For most people, two to three milligrams of fentanyl is capable of inducing respiratory depression, respiratory arrest, and possibly death.

10. On August 25, 2021, at approximately 12:50 p.m., the UCAs arrived at the Alderwood Mall to await CANAN's arrival. At approximately 1:45 p.m. CANAN arrived at the Alderwood Mall and met with the UCAs in the parking lot. During the meet, CANAN handed one of the UCAs a black bag which was later found to contain approximately 400 blue "M30" pills. The UCA then handed CANAN an envelope that contained two thousand dollars. After the exchange, CANAN and the UCAs then began conversations regarding narcotics transactions. During the conversation, CANAN offered to sell the UCAs 100,000 pills and talked about having access to kilogram-quantity amounts of "Crystal" (methamphetamine), heroin, and cocaine. The UCAs told CANAN that they could sell CANAN multiple kilograms of cocaine. After the meet concluded, law enforcement maintained continuous surveillance on CANAN and followed him back to an apartment complex in Maple Valley, Washington. Following the August 25th meeting, UCA1 exchanged multiple communications and telephonic messages with CANAN. During those communications, CANAN advised that he and an associate wanted to meet prior to any exchange to discuss details of how the narcotics transaction will take place. This meeting was scheduled for September 8, 2021.

11. During early September 2021, UCA1 exchanged multiple text messages and telephone calls with CANAN and arranged to meet him on September 8, 2021 to further discuss CANAN selling the UCAs 100,000 pills. On September 8, 2021 at

approximately 5:37pm, two HSI UCAs met with CANAN and an unidentified male, later identified as Jason PATRICK (at the time of his arrest detailed below) at a restaurant in Lynnwood, Washington. During the meeting, CANAN and PATRICK agreed to provide the UCAs 100,000 "pills" in exchange for three kilograms of cocaine and currency. CANAN, PATRICK and the UCAs agreed to conduct the transaction on September 9, 2021.

12. On September 9, 2021, the UCAs met with CANAN and PATRICK at an agreed upon location in the Kohls parking lot in Lynnwood, Washington. CANAN arrived in a Silver Mercedes SUV and PATRICK arrived on a green Harley Davidson Motorcycle. The Silver Mercedes SUV (WA/US BUH8407) is registered to CANAN and agents have observed CANAN driving this vehicle throughout the investigation. Upon meeting with the UCAs, PATRICK shook hands with UCA1 and briefly entered the rear passenger side of the UCA's vehicle. PATRICK looked inside a grey Nordstrom bag and saw two bricks of cocaine and stated to the UCA1 that CANAN will take the product and he (PATRICK) will take the money.

13. UCA1 then exited the UCAs' vehicle and got into CANAN's Silver Mercedes SUV. On the floor of the passenger seat was a teal bag with pink trim. UCA1 looked in the bag and saw what appeared to be packages of pills. (These pills were subsequently weighed and presumptively field tested positive for the properties of fentanyl. The total weight of the pills was approximately 11.30 kilograms inside their packaging.) CANAN stated for the UCA1 to take the bag as it was his (UCA1). UCA1 then took possession of the bag and exited CANAN's vehicle and placed the bag inside the UCA vehicle on the rear driver side. UCA1 informed PATRICK the money was in another vehicle parked nearby and UCA1 and PATRICK proceeded to walk in that direction. At this point HSI, agents conducted an arrest of CANAN and PATRICK.

14. CANAN was advised of his *Miranda* rights which he waived both orally and in writing. During the interview that followed, CANAN provided information to include the following. What follows is a summary of admissions made by CANAN

regarding his involvement with the September 9, 2021 deal. The following is not meant to represent a verbatim memorialization of statements, but serves as a summary in substance and in part. CANAN stated he met with PATRICK before the meeting and retrieved the pills from PATRICK and placed them in his vehicle (CANAN's silver Mercedes). CANAN stated he is pretty sure the pills contain fentanyl. He stated he does his own research and fentanyl is the only drug there is that is easily made into mass quantities. CANAN stated he did not take part of the planning to obtain the large quantity of pills, but he did retrieve the pills from PATRICK. CANAN also admitted to having heroin and methamphetamine inside his apartment. CANAN provided agents written consent to search for and retrieve the heroin and methamphetamine. This search resulted in the discovery of approximately 749.3 grams of heroin (gross weight in packaging) and approximately 893.3 grams of methamphetamines (gross weight in packaging). The narcotics presumptively field tested positive for the properties of heroin and methamphetamines respectively.

15. PATRICK was advised of his *Miranda* rights which he waived both orally and in writing. During the interview that followed, PATRICK provided information to include the following. What follows is a summary of admissions made by PATRICK regarding his involvement with the September 9, 2021 deal. The following is not meant to represent a verbatim memorialization of statements, but serves as a summary in substance and in part. PATRICK stated CANAN hired him to be "big and scary." An agent asked PATRICK if he was hired as "Muscle" for a narcotics deal and he responded in the affirmative that he was. PATRICK stated CANAN was supposed to pay him $2000 for assisting him and that he was supposed to pick up a bag of money on the deal that took place on September 9, 2021.

16. The pills purchased from CANAN on August 25, 2021, and seized from CANAN and PATRICK on September 9, 2021, resemble M-30 Oxycodone according to the drug identifier Drugs.com, as they are blue in color, round in shape and stamped with the marking M-30. Based on CANAN's statements to UCAs in which he stated that the

pills contain "Fentanyl," as well as my experience of seeing these pills inundating the Western District of Washington in other investigations, I believe the pills seized on August 25, 2021, and September 9, 2021 are not legitimate pharmaceutical pills but are fentanyl-based.

**CONCLUSION**

17. Based on the above facts, I respectfully submit that there is probable cause to believe that Steven CANAN and Jason PATRICK, committed the offense of Possession of Fentanyl with Intent to Distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

Scott Fusco
Special Agent, HSI

Based on the above-named Complainant having provided a sworn statement attesting to the truth of the foregoing Affidavit this 10th day of September, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

DATED this 10th day of September 2021

The Honorable S. Kate Vaughan
United States Magistrate Judge